UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRAD EDWARDS,<br><br>                    Plaintiff,<br><br>        v.<br><br>LOCKHEED MARTIN CORP.,<br><br>                    Defendant. | NO:  12-CV-5057-TOR<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendant's Motion for Summary Judgment (ECF No. 25), and Plaintiff's Motion for Reconsideration (ECF No. 55).  These matters were heard with oral argument on June 19, 2013.  Plaintiff was represented by Mary E. Schultz. Defendant was represented by Thaddeus J. O'Sullivan.  The Court has reviewed the briefing, the record and files herein, has the benefit of oral argument and is fully informed.

//

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

This is a breach of contract action to enforce a voluntary separation agreement between Plaintiff Brad Edwards ("Plaintiff"), and his former employer, Defendant Lockheed Martin Corp. ("Defendant").  Plaintiff alleges that Defendant breached its obligation to pay him severance benefits in exchange for voluntarily terminating his employment under the Lockheed Martin Voluntary Executive Separation Plan.  *See* ECF No. 2 at 9-15 (Complaint). In his Memorandum in Support of Summary Judgment, Defendant more narrowly avers that this is merely a simple breach of contract action, that contract being the Release of Claims he signed on January 31, 2011.  *See* ECF No. 22.

Defendant contends that Plaintiff's breach of contract claims are preempted by ERISA because they relate to the administration of an employee benefit plan and the Release of Claims form is but one aspect of the overall plan.  In the alternative, Defendant contends Plaintiff forfeited his right to receive the severance benefit by claiming reimbursement for inaccurately-documented travel expenses. For the reasons discussed below, the Court finds that Plaintiff's claims are preempted by ERISA and must be dismissed for lack of subject-matter jurisdiction.

FACTS

Plaintiff is a former employee of Defendant Lockheed Martin Corporation. At all times relevant to this lawsuit, Plaintiff was employed as a Director of

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 2

Contracts in Defendant's Information Systems and Global Solutions division.  ECF No. 51 at ¶ 3.  His primary responsibility in this role was to ensure that Defendant satisfied its contractual obligations to the federal government and complied with the Federal Acquisition Regulations.  Edwards Dep., ECF No. 27-2, at Tr. 44-45.  Plaintiff was also authorized to enter into contracts with the federal government on behalf of Lockheed Martin.  Edwards Dep., ECF No. 27-2, at Tr. 45.

On July 6, Defendant's Chairman and CEO announced to Plaintiff and other management-level employees that the company had implemented a force reduction program known as the Voluntary Executive Separation Program ("VESP").  ECF No. 21-1 at EDWARDS 000011-000012.  In broad terms, this program offered certain employees a one-time lump sum payment in exchange for voluntarily terminating their employment within a specified time period, with the payment offered to each employee varying based upon his or her years of service with the company.  ECF No. 21-1 at EDWARDS 000011.

Shortly after the program was announced, Defendant's Senior Vice President of Human Resources sent an email to Plaintiff and all other eligible employees which explained the program in further detail.  ECF No. 21-1 at EDWARDS 000013-000014.  Included in this email was a hyperlink to a page containing "program highlights with questions and answers."  ECF No. 21-1 at EDWARDS 000014; Walton Decl., ECF No. 58, at ¶ 10.  By clicking on this link,

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 3

the reader of the email could access a more detailed summary of the VESP program and answers to several "Frequently Asked Questions."  ECF No. 21-1 at EDWARDS 000015-000029; Walton Decl., ECF No. 58, at ¶ 11.

As relevant here, the first page of this more detailed summary contained active hyperlinks to the following VESP-related documents:

- Program Highlights
- Informational Resources
- Questions and Answers
- Official Plan Document
- Application Form
- Sample Release of Claims Document

ECF No. 21-1 at EDWARDS 000015 (underlined emphasis for hyperlinks in original); Edwards Dep., ECF No. 60-1, at Tr. 126-27; Walton Decl., ECF No. 58, at ¶¶ 12-14.  Also appearing on the first page was the following disclaimer: "This document provides highlights of the program.  The Plan Document is the authoritative source for the program terms and conditions."  ECF No. 21-1 at EDWARDS 000015 (underlined emphasis for hyperlink in original).

Clicking on either of the hyperlinks for the "Plan Document" would take the reader to a document entitled "Lockheed Martin Corporation Special Termination Plan for Certain Management Employees."  ECF No. 28-1.  This document (hereafter the "VESP Plan" or "Plan") was approved by Defendant's Board of Directors on June 24, 2010.  Block Decl., ECF No. 59, at ¶¶ 16-20.  In pertinent

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 4

part, the VESP Plan states that it "is intended to constitute an employee welfare

benefit plan under the Employee Retirement Income Security Act of 1974

("ERISA") that provides termination benefits to a select group of management or

highly compensated employees." ECF No. 28-1 at 1.  The Plan further specifies

that participation by any eligible employee is contingent upon "accept[ance] by the

Senior Vice President, Human Resources, in his discretion and in consultation with

business area corporate functional leadership." ECF No. 28-1 at 3.

Plaintiff applied for the VESP program on September 7, 2010.  ECF No. 21-

1 at EDWARDS 000031-000034.  Defendant accepted Plaintiff's application on

September 21, 2010.  ECF No. 21-1 at EDWARDS 000035.  In a letter dated

October 4, 2010, Defendant advised Plaintiff that his total estimated termination

benefit under the VESP Plan would be $254,353.40.  ECF No. 21-1 at EDWARDS

000036.  Plaintiff subsequently resigned his employment on January 31, 2011.  He

executed a standard form "Release of Claims" document on the same day.  ECF

No. 21-2 at EDWARDS 000086-000093.

Shortly after resigning his employment, Plaintiff submitted a claim for

reimbursement of travel expenses in the amount of $4,700.  Due to the large

amount of money involved, Defendant flagged Plaintiff's reimbursement request

for "reconciliation." Raudenbush Decl., ECF No. 32, at ¶ 13.  During the

reconciliation process, Defendant identified "unusual activity" on Plaintiff's

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 5

1    expense account.  Raudenbush Decl., ECF No. 32, at ¶ 14.  This discovery

2    prompted Defendant to perform an audit of expenses submitted from June 2006 to

3    December 2010.  Raudenbush Decl., ECF No. 32, at ¶¶ 16-17.[1]

4         Based upon the results of this audit, Defendant concluded that Plaintiff had

5    "collect[ed] $42,741.16 in expense reimbursements that he was not entitled to

6    receive."  Raudenbush Decl., ECF No. 32, at ¶ 17.  According to Defendant's

7    auditor, the majority of the improper reimbursements stemmed from Plaintiff

8    "requesting lodging reimbursement based on [his] location of work rather than

9    [his] location of lodging."  Raudenbush Decl., ECF No. 32, at ¶ 18.  "By

10   requesting per diem reimbursement based on place of work rather than the place of

11   lodging," the auditor concluded, "Plaintiff received approximately $100.00 more

12   per day than he was entitled to receive under Defendant's Travel Policy."

13   Raudenbush Decl., ECF No. 32, at ¶ 21.

14        In a letter dated July 15, 2011, Defendant informed Plaintiff that, as a result

15   of his improper expense reporting, he was ineligible to receive a termination

16   benefit under the VESP Plan:

17   _____

18   [1] The Declaration of Matthew Raudenbush contains two consecutive paragraphs

19   which are numbered 17.  *See* ECF No. 32.  In the interest of clarity, the Court has

20   designated the latter of these two paragraphs as "17A."

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 6

The Information Systems and Global Solutions ("IS&GS") business area has advised that you submitted improper expense reports during your period of employment with the Corporation.  This resulted in the violation of the Corporation's policies, including but not limited to CPS-001, Ethics and Business Conduct.  Under Section 7(a) of the VESP document, the Corporation "retains the right to condition payment of a Termination benefit upon the Eligible Employee maintaining fully satisfactory work performance until the Eligible Employee's Termination Date."  The Corporation has decided that you failed to maintain satisfactory work performance by submitting improper expense reports in violation of the Corporation's policies.

In addition, IS&GS has advised that your termination has been reclassified as a termination for cause due to your submission of improper expense reports.  Section 3 of the VESP provides that an employee will not be entitled [to] a Termination Benefit if the employee is terminated for "Cause." . . . The Corporation has determined that your submission of improper expense reports in violation of the Corporation's policies meets the definition of a for "Cause" termination under the VESP.

For these reasons, the Corporation has determined that you are ineligible to receive payment of a Termination Benefit under the VESP.  If you disagree with the decision in this matter, you may submit a written statement to the Claims Administrator within 120 days of the date of this letter.

ECF No. 21-2 at EDWARDS 000127-000128; *see also* ECF No. 21-2 at

EDWARDS 000129 ("Based on the results of the audit . . . had you been a current

employee, you would have been terminated for cause due to your misconduct.").

Plaintiff appealed Defendant's decision to the VESP Claims Administrator

on October 17, 2011.  ECF No. 21-2 at EDWARDS 000131-000132.  This appeal

was subsequently considered by the VESP Appeals Committee, which affirmed the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 7

1  denial of benefits in a letter dated December 9, 2011.  ECF No. 21-2 at

2  EDWARDS 000135-000137.  This lawsuit followed.  Plaintiff's causes of action

3  are limited to common law breach of contract claims.  Plaintiff has not asserted a

4  claim to recover benefits due under an employee benefit plan pursuant to ERISA

5  § 502(a).  *See* 29 U.S.C. § 1132(a)(1)(B) (creating cause of action in favor of

6  ERISA plan beneficiary "to recover benefits due to him under the terms of his

7  plan, to enforce his rights under the terms of the plan, or to clarify his rights to

8  future benefits under the terms of the plan").

9                                                    DISCUSSION

10         Summary judgment may be granted under Rule 56(a) upon a showing by the

11  moving party "that there is no genuine dispute as to any material fact and that the

12  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

13  moving party bears the initial burden of demonstrating the absence of any genuine

14  issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

15  burden then shifts to the non-moving party to identify specific genuine issues of

16  material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby,*

17  *Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in

18  support of the plaintiff's position will be insufficient; there must be evidence on

19  which the jury could reasonably find for the plaintiff."  *Id.* at 252.

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 8

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Finally, the court may only consider evidence that would be admissible at trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

## A. ERISA Preemption

The Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), provides for federal regulation of private employee benefit plans. Congress' purpose in enacting ERISA was to create a uniform regulatory regime that would "protect employers from conflicting and inconsistent state and local regulation of [employee benefit] plans." *Henkin v. Northrop Corp.*, 921 F.2d 864, 867 (9th Cir. 1990). To that end, Congress passed ERISA with "expansive preemption provisions" designed to ensure that the regulation of employee benefit plans remains "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citations and quotation omitted).

///

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 9

1.   <u>Admissibility of VESP Plan Document</u>

As a threshold matter, the Court must address Plaintiff's various arguments concerning the admissibility and relevance of the VESP Plan document.  Contrary to Plaintiff's assertions, this document has been properly and independently authenticated by at least two witnesses with personal knowledge of its contents. *See* Filomeo Decl., ECF No. 30, at ¶¶ 3-6; Block Decl., ECF No. 59, at ¶¶ 2-20. Based upon the testimony of these witnesses, the Court finds that the document entitled "Exhibit A – Lockheed Martin Corporation Special Termination Plan for Certain Management Employees" is the official VESP Plan document adopted by the Board of Directors of Lockheed Martin Corporation on June 24, 2010.  Indeed, this document is "an exact and complete copy" of the Plan "in the exact form approved by [Defendant's] Management Development and Compensation Committee" prior to being adopted by the full Board.  Block Decl., ECF No. 59, at ¶¶ 18, 20.  As such, the document is both relevant and admissible.  Plaintiff's assertions to the contrary are wholly unavailing.

The Plan document is also clearly part of the parties' contract.  First, the Plan is expressly integrated with the Release of Claims document: "The Plan and this Release contain all the agreements between me and the Corporation relating to my termination of employment."  ECF No 21-2 at EDWARDS 000091.  Second, the Release of Claims Plaintiff signed expressly refers to the Plan by both its

official and informal names in bold print in the opening paragraph: "In order to be

eligible for the *Lockheed Martin Corporation Special Termination Plan for*

*Certain Management Employees*, also known as the *Voluntary Executive*

*Separation Program*, [this] signed Release of Claims must be delivered to

Lockheed Martin Human Resources . . . no later than the 45th calendar day from

your termination date."  ECF No. 21-2 at EDWARDS 000086 (emphasis added).

Third, the Release of Claims clearly states that the bargained-for severance benefit

is being paid "pursuant to" the Plan:

> [U]nder the Lockheed Martin Corporation Special Termination Plan
> for Certain Management Employees, also known as the Voluntary
> Executive Separation Program (hereinafter the "Plan"), *if I voluntarily*
> *elect to sign this Release, the Corporation,* **pursuant to the Plan***, will*
> *pay me the Termination Benefit, as defined in the Plan*[.]

ECF No. 21-2 at EDWARDS 000086 (emphasis added).  Accordingly, there is

absolutely no merit to Plaintiff's assertion that the VESP Plan is an "extra-

contractual document."  Indeed, the VESP Plan *is* the contract, and executing the

Release of Claims was simply one of Plaintiff's obligations under that contract.

2.  Preemption

The specific preemption provision at issue in this case, 29 U.S.C. § 1144(a),

provides that ERISA "shall supersede any and all State laws insofar as they may

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 11

now or hereafter relate to any employee benefit plan."[2]  29 U.S.C. § 1144(a).  The

dispositive question for purposes of Defendant's preemption challenge is whether

the VESP Plan qualifies as an employee benefit "plan" within the meaning of

§ 1144(a).  Unfortunately, ERISA itself "provides little assistance" in answering

this question.  *Emery v. Bay Capital Corp.*, 354 F. Supp. 2d 589, 591 (D. Md.

2005).  Because the terms "employee benefit plan" and "plan" are defined "only

tautologically," in the text of the statute, courts faced with preemption challenges

must pay particular attention to the underlying purpose of § 1144(a).  *Fort Halifax

Packing Co., Inc. v. Coyne*, 482 U.S. 1, 9 (1987); *see also Graham v. Balcor, Co.*,

146 F.3d 1052, 1055 (9th Cir. 1998) ("In analyzing any preemption question, 'the

---

[2] At oral argument, Plaintiff's counsel argued that the two-prong test discussed in

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir.

2009) provides the appropriate framework for analyzing the preemption issue.

Like the parties in the *Marin* case, however, counsel "ha[s] not clearly understood

the difference between complete preemption under ERISA § 502(a), 29 U.S.C. §

1132(a), and conflict preemption under ERISA § 514(a), 29 U.S.C. § 1144(a)."

581 F.3d at 944-45.  Defendant has moved to dismiss Plaintiff's claims as

preempted under ERISA § 514(a) because they "relate to" an ERISA plan.  *See id.*

at 945.  The complete preemption analysis discussed in *Marin* does not apply.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 12

purpose of Congress is the ultimate touchstone.'") (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

As the Supreme Court articulated in *Fort Halifax*, the one overarching purpose of § 1144 is to ensure that employers do not become paralyzed by "conflicting or inconsistent" state and federal regulation of benefit plans:

> An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others.

> *    *    *

> Obligating the employer to satisfy the varied and perhaps conflicting requirements of particular state fair employment laws would make administration of a nationwide plan more difficult. Such a situation would produce considerable inefficiencies, which the employer might choose to offset by lowering benefit levels. . . . ERISA's comprehensive pre-emption of state law was meant to minimize this sort of interference with the administration of employee benefit plans, so that employers would not have to administer their plans differently in each State in which they have employees.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 13

1    482 U.S. at 9-10 (internal quotations and citations omitted).  In sum, § 1144(a)

2    exists to ensure "that the administrative practices of a benefit plan will be governed

3    by only a single set of regulations."  *Id*. at 11.

4        Despite this strong preference for uniform regulation, however, § 1144(a) is

5    expressly limited in scope.  As the *Fort Halifax* Court explained, state laws are

6    only preempted to the extent that they relate to employee benefit *plans*:

> Congress intended pre-emption to afford employers the advantages of
> a uniform set of administrative procedures governed by a single set of
> regulations.  This concern only arises, however, with respect to
> **benefits whose provision by nature requires an ongoing**
> **administrative program to meet the employer's obligation**.  It is
> for this reason that Congress pre-empted state laws relating to *plans*,
> rather than simply to *benefits*.  Only a plan embodies a set of
> administrative practices vulnerable to the burden that would be
> imposed by a patchwork scheme of regulation.

12   *Id.* at 11-12 (bold emphasis added).  From this language in *Fort Halifax*, "a

13   relatively simple test has emerged to determine whether a plan is covered by

14   ERISA: does the benefit package implicate an *ongoing administrative scheme*?"

15   *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) (emphasis added) (citing

16   *Fort Halifax*, 482 U.S. at 12).

17       In the Ninth Circuit, an "ongoing administrative scheme" is implicated

18   where the employer is required to exercise a significant degree of discretion in

19   determining eligibility for the plan and/or in awarding benefits to participants.

20   *Compare Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (ongoing

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

administrative scheme requirement satisfied where "the program's administration required a case-by-case, discretionary application of its terms"), *with Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (requirement not satisfied where "[t]he level of discretion, if any, which [the employer] was required to exercise in implementing the agreement was slight").  In other words, where a plan requires an employer to make eligibility and benefits decisions on an individual case basis—such that there is effectively "no way to administer the program *without* an administrative scheme"—the plan will satisfy the ongoing administrative scheme requirement. *Bogue*, 976 F.2d at 1323 (emphasis added).  Where a plan merely requires the employer to take a series of unthinking, pre-determined actions, by contrast, there is no ongoing administrative scheme subject to regulation under ERISA. *See Delaye*, 39 F.3d at 237 (no ongoing administrative scheme implicated where employer was merely required to make "a straightforward computation of a one-time obligation").

Since *Fort Halifax* was decided, courts have recognized that severance packages may or may not satisfy ERISA's "ongoing administrative scheme" requirement depending upon how they are structured. *See Delaye*, 39 F.3d at 237 ("Provisions for severance pay may [or may not] constitute an employee welfare benefit plan within the meaning of ERISA."); *Velarde*, 105 F.3d at 1316 ("The definition of 'employee benefit plan' [under ERISA] can include severance

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 15

benefits.").  Traditional severance packages, which call for nothing more than a one-time, lump-sum payment, generally do not satisfy the requirement.  Because such plans "require[] no administrative scheme whatsoever to meet the employer's obligation," they are not subject to regulation under ERISA.  *Fort Halifax*, 482 U.S. at 12.  On the other hand, severance packages which require the employer to exercise discretion in making eligibility determinations are generally sufficient to implicate an ongoing administrative scheme.  *See Bogue*, 976 F.2d at 1323 (ongoing administrative scheme requirement satisfied where employer was required to make "a case-by-case, discretionary" decision about whether employees had obtained a job "substantially equivalent" to their prior employment).

Here, Defendant contends that the VESP Plan implicates an ongoing administrative scheme for three reasons: (1) because eligibility decisions are made on an individual, case-by-case basis in Defendant's sole discretion; (2) because the Claims Administrator must determine whether an enrolled employee has been terminated for cause prior to awarding severance benefits; and (3) because terms of the Plan provide for an administrative appeal of any decision rendered by the Claims Administrator.  ECF No. 25 at 9-12.  In Defendant's view, each of these features of the Plan is sufficient to satisfy the ongoing administrative scheme requirement.

1    Defendant's second contention is foreclosed by *Velarde*.  There, the Ninth

2  Circuit held that conditioning a severance payment on an employee maintaining

3  satisfactory work performance and not being terminated for cause implicates only a

4  "minimal quantum of discretion" on the part of the employer.  *Velarde*, 105 F.3d at

5  1317.  As such, this type of "eligibility requirement" does not implicate an ongoing

6  administrative scheme for purposes of ERISA preemption under § 1144(a).  *Id.*

7    Defendant's first and third contentions are more persuasive.  As Defendant

8  correctly notes, the plain language of the Plan calls for Defendant to make

9  individualized case-by-case decisions about which employees are eligible to

10  participate.  Specifically, the Plan provides that any request to enroll must be

11  "accepted by the Senior Vice President, Human Resources, *in his discretion* and *in*

12  *consultation with business area corporate functional leadership*."  ECF No. 28-1 at

13  Section 2(c) (emphasis added); *see also* ECF No. 28-1 at Section 8 ("The

14  Company shall have the sole discretion . . . to accept or reject any Employee's

15  request to terminate employment under the [enrollment] Window.").  This

16  provision allows Defendant to deny enrollment to any otherwise qualified

17  employee based upon the specific needs of a particular business unit.  As

18  Defendant explained on the day the Plan was announced,

19    **[Question] 10: Can Lockheed Martin refuse eligible leaders the**
    **right to take advantage of this special program and, if so, will the**

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 17

**fact that they volunteered impact decisions about them in the future?**

[Answer:]  *Unless there are extenuating circumstances or severe program impacts*, requests to participate in the program will be accepted.  All denied requests will be subject to review by the Senior Vice President of Human Resources for Lockheed Martin.  The plan contains an appeal process for denials and other issues.  Electing to participate will not adversely impact the Corporation's view of an individual.

ECF No. 21-1 at EDWARDS 000018 (emphasis added).  Notably, the record reflects that at least six (6) out of approximately six hundred eligible employees were denied enrollment in the Plan pursuant to this discretionary authority.  *See* ECF No. 21-1 at EDWARDS 00052-000085.

Additionally, the Plan provides for an administrative appeal of any decisions made by the Claims Administrator—including discretionary denials of enrollment.  *See* ECF No. 28-1 at Section 9(a) (specifying procedures to be followed for claims "whether relating to a rejection [of enrollment] or the determination of benefits").  To the extent that an employee disagrees with the Claims Administrator's decision to exclude him or her from participating, the employee may appeal the decision to the Appeals Committee, which "will provide an impartial review that takes into account all comments, records and other information submitted by the claimant relating to the claim."  ECF No. 28-1 at Section 9(a)(iv).

The Court finds that the discretion retained by Defendant to deny eligible employees participation in the Plan based upon the needs of the business, along with the existence of a comprehensive appeals process to challenge such denials, sufficiently implicates an "ongoing administrative scheme."  Unlike severance packages which merely provide for "a one-time, lump sum payment triggered by a single event," *Fort Halifax*, 482 U.S. at 12, the VESP Plan requires Defendant to exercise a non-trivial degree of discretion in deciding which employees may participate.  And while the record reflects that only a handful of employees were denied enrollment, the fact that some *were* denied indicates that Defendant did, in fact, exercise "ongoing particularized discretion" with respect to the Plan's administration.  *Velarde*, 105 F.3d at 1317.  The Court concludes that the exercise of this type of discretion is sufficient to "transform a simple severance agreement into an ERISA employee benefits plan."  *Velarde*, 105 F.3d at 1317.

Furthermore, the VESP Plan is materially different from the types of severance packages at issue in *Fort Halifax* and *Velarde*.  In those cases, the event which "triggered" the availability of severance benefits was an across-the-board closure of an entire facility.  *Fort Halifax*, 482 U.S. at 3; *Velarde*, 105 F.3d at 1315.  As a result, the respective employers were merely required to "mak[e] a single set of payments to employees at the time the plant[s] close[d]."  *Fort Halifax*, 482 U.S. at 12.  This type of "one-time obligation," the *Fort Halifax* Court

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 19

1 reasoned, "simply creates no need for an ongoing administrative program for

2 processing claims and paying benefits." *Id.*  In other words, "[t]o do little more

3 than write a check hardly constitutes the operation of a benefit plan." *Id.*

4       In this case, by contrast, the "triggering" event was Defendant's strategic

5 decision to "de-layer" its upper management level workforce.  As noted above, this

6 process required Defendant to exercise discretion in determining which self-

7 selected employees would be allowed to participate in the Plan.  Unlike the

8 severance packages at issue in *Fort Halifax* and *Velarde*, the VESP Plan did not

9 provide for across-the-board payments to laid-off employees.  Rather, the Plan was

10 designed to provide a certain class of employees an opportunity to leave the

11 company earlier than they might have otherwise contemplated.  The process by

12 which Defendant accomplished this objective was much more involved than

13 simply "writ[ing] a check to employees on their way out the door.  *Fort Halifax*,

14 482 U.S. at 12.

15       Finally, it bears noting that participation in the VESP Plan was *voluntary*.

16 Defendant clearly contemplated that certain eligible employees would decide to

17 participate, while others would elect to continue working.  It was presumably for

18 this reason that Defendant implemented a formal application process, provided

19 employees with a wealth of information and resources to assist them in making an

20 informed decision, and imposed an application deadline over two months after the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 20

Plan was announced.  Given the massive scope of the Plan—approximately 2,263 employees were eligible to participate (*see* ECF No. 21-1 at EDWARDS 000052-000085)—it would have been exceedingly difficult for Defendant to have "administer[ed] the program *without* an administrative scheme" in place.  *See Bogue*, 976 F.2d at 1323 (emphasis added).  In sum, this is precisely the type of employee benefit plan that "by nature requires an ongoing administrative program to meet the employer's obligation."  *Fort Halifax*, 482 U.S. at 11.  Defendant's motion for summary judgment is granted as it pertains to ERISA preemption.

**B. Plaintiff's Motion for Summary Judgment and Motion for Reconsideration**

In light of the ruling above, the Court lacks subject matter jurisdiction over Plaintiff's breach of contract claims.  Accordingly, the Court must deny Plaintiff's Motion for Summary Judgment and dismiss his claims with prejudice.  The Court will also deny as moot Plaintiff's Motion for Reconsideration of the Court's May 13, 2013 Order denying Plaintiff leave to amend his Complaint to include a claim for violations of the State of Maryland's Wage Payment and Collection Act, as any such claim would also be preempted by ERISA.

**IT IS HEREBY ORDERED:**

  1.  Defendant's Motion for Summary Judgment (ECF No. 25) is

      **GRANTED**.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 21

2.  Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

3.  Plaintiff's Motion for Reconsideration (ECF No. 55) is **DENIED** as

    moot.

4.  All remaining deadlines, hearings and trial are vacated.

The District Court Executive is hereby directed to enter this Order, enter

**JUDGMENT** of dismissal for lack of jurisdiction, provide copies to counsel, and

**CLOSE** the file.

**DATED** June 20, 2013.



THOMAS O. RICE
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 22